


May 30, 2025
***VIA ELECTRONIC MAIL and ECF***

The Honorable Joel H. Slomsky
United States District Court
Eastern District of Pennsylvania
Philadelphia Division
5614 James A. Byrne United States Courthouse
601 Market Street
Philadelphia, PA 19106
Chambers_of_Judge_Joel_H_Slomsky@paed.uscourts.gov

**Re: Ploeger v. Penn**
**2:22-cv-02389-JHS**
**Extended Discovery Dispute (ECF 42-53)**

Dear Judge Slomsky,

I write to address Defendant's repeated and intentional failure to comply with its Rule 30(b)(6) obligations. Defendant's deposition testimony (excerpted below) demonstrates an inexplicable refusal to properly investigate its institutional response to critical discovery documents. Plaintiff seeks leave, consistent with the Court's logic in ECF 50 permitting Dr. Shapiro's deposition, to depose Dr. Kozuma and compel production of newly-disclosed but improperly withheld documents.

At the original deposition regarding this Topic 32 ("PENN's actions regarding or in response to the documents found at Bates [numerous specifically identified documents which included, inter alia,] D615-619"), Defendant testified that it "did not know" why it failed to investigate what it did regarding or in response to, inter alia, D615-619. It then explained that Dr. Susan Shapiro did not work for it anymore, therefore the witness was unable to speak with her about the email. According to Defendant, "I didn't understand my responsibility to extend to communicate with someone who is no longer employed by the University."

At the time of the original motion to compel (ECF 42), Plaintiff sought and paid for an expedited excerpt of the transcript to highlight for the Court Defendant's failure to prepare for the deposition. As discussed in the original motion, the Dr. Shapiro issue was not the sole problem with Defendant's adherence to Rule 30(b)(6). (See ECF 42, ¶ 76, fn. 1). Now that the completed transcript is available, the egregiousness of Defendant's conduct is clearer. As demonstrated in the attached excerpts, Defendant repeatedly refused to contact available employees or former employees with clearly relevant information, offering shifting and inadequate rationalizations."

The Trial Law Firm, LLC
Fort Pitt Commons, Suite 220
445 Fort Pitt Boulevard
Pittsburgh, Pennsylvania 15219

Mart Harris
412.588.0030 (p)
412.265.6505 (f)
MH@TLawF.com



Q- Okay. And understanding that Susan doesn't work there anymore, Kozuma does, why didn't you talk to him about this?

A- He -- I prepared by looking at Disability Services process and the documentation that Weingarten Center staff made in our system as part of that official accommodation process. Students are welcome to copy any -- you know, students often copy other staff members on emails. These emails are addressed to a Weingarten Center staff member. So that's what I focused on.

Q- It's also addressed to Dr. Kozuma. You didn't interact with him, correct?

A- Correct. I did not speak with him about this case.

Q- All right. Why not?

A- I -- I think I just answered the question. I was focused on Weingarten Center process, interactions that our staff had, and then documentation of those interactions.

Q- Did you know that your testimony was on behalf of Penn as a whole, or did you think your testimony was just about your office?

[OBJECTION]

A- I just said that I'm in this deposition as representing the University of Pennsylvania.

Q- Okay. And understanding that you're representing the University of Pennsylvania, why did you limit your research to your office?

A- Yeah, again, I -- I just answered that question. I reviewed the available documentation. I spoke with a staff member who was a member of the Weingarten Center staff, gathered additional documentation for our Legacy database to prepare for the meeting. Other staff members -- if a student includes another staff member on an email about their accommodation



process, it doesn't necessarily mean that person has -- has any formal role in the determination of accommodations.

Q- Do you know whether or not Hikaru Kozuma had a role in the determination or handling of April's accommodation request?

A- Based on the documentation and the -- that is available and the additional documentation that I was able to provide, Weingarten Center staff are the only staff member who are -- who coordinate and run -- or, like, make determinations about accommodations relating to disability.

Q- So you didn't call Susan because she didn't work there anymore, at Penn. You didn't call Kozuma because he didn't work in a specific office, even though you're here to testify about Penn's actions, not just your office's actions. Do I have that correct?

OBJECTION

A- From this documentation, I can see that Dr. Kozuma was included as a recipient of the message. My interpretation is that the message is addressed to Dr. Shapiro as a member of the Weingarten Center staff. I don't see in the text or the email any reference to Dr. Kozuma. I can't tell from the emails from Dr. Shapiro if he was included on her messages. So, as far as I can see, he's a staff member that the student included in their -- as a recipient, but didn't have any other kind of observable role in this communication.

...

Q- Okay. And you have no idea what was done by Penn in response to this email outlining that she needs somebody with her during the meeting, correct?

A- Yeah, again, I have access to the documentation that's available here. So I -- I don't have knowledge of

Q- Objection. Unresponsive. Not "access to." I asked a yes-no question. Do you – you don't know what was done in response



to this email where April asked for an accommodation to allow an advocate at her meeting, correct?

OBJECTION

A- Yea, I had access to this documentation. I don't know what occurred after this email.

Defendant's shifting explanations strain credulity and border on bad faith. First, it claims ignorance because Dr. Shapiro no longer works there. Yet it refuses to speak with Dr. Kozuma, who remains employed, merely because he's located in another office. Penn has arbitrarily carved itself into isolated silos to avoid meaningful preparation, precisely what Rule 30(b)(6) forbids. Rule 30(b)(6) imposes an affirmative duty upon Defendant to adequately prepare its witness to testify fully and accurately on behalf of the entire University, not merely one isolated office. Defendant's apparent belief that it need only review certain convenient offices or existing employees constitutes a fundamental misunderstanding of its obligations.

In the hearing on the Motion to Compel, the Court permitted Plaintiff to depose Dr. Shapiro since it failed to speak to her to prepare for the deposition. In Dr. Shapiro's deposition, she admitted that she did not know what Dr. Kozuma did in response to the document at issue.

She did clarify though, that Dr. Kozuma was "part of Student University Life" which is "the umbrella organization for -- we're one group and there were lots of different offices that fell underneath the division of Student Life in the University." Dr. Shapiro confirmed that Dr. Kozuma was "a representative of sort of the parent division under which Student Disability Services falls." Dr. Shapiro further admitted she did not know what Student University Life did in regards or response to the document. She did not even speak to Dr. Kozuma, or even ask to talk to him in order to prepare for the deposition; "[t]here's no point" since "[Dr. Shapiro] did'n't have any interaction with [Dr. Kozuma]. This e-mail was sent by April."

In conclusion, Defendant was supposed to investigate what it did in response to several documents produced in discovery. While this letter only deals with Exhibit 68, the issue went far beyond Exhibit 68 (which will likely be the subject of a more extensive Motion and/or a Fed.R.Civ.P. 56(d) filing). For purposes of this letter however, Plaintiff seeks an extension of the Court's logic which resulted in the Order at ECF 50 allowing Plaintiff to depose Dr. Shapiro to allow the deposition of Dr. Kozuma.

Additionally, in her deposition, Dr. Shapiro disclosed the existence of an entire file of communications that were not produced in discovery. The undersigned asked defense



counsel about the voluntary production of this file, and she represented that "[w]e already produced the folder you referenced below. It was Bates stamped as D_9-54." Bates 954 was the second page of an email that was not even addressed to Dr. Shapiro. Plaintiff also asks that the original file and its contents (or an exact copy) be compelled, in addition to Dr. Kozuma's deposition.

Given Defendant's repeated failure to adequately prepare its witness, shifting justifications, and improper withholding of clearly discoverable materials, Plaintiff further requests that the Court consider appropriate sanctions to deter further discovery abuses.

Best regards,

______________________________

Mart Harris, Esquire
*Trial lawyer for April Ploeger*

cc: Leslie Greenspan, Esq.
*via e-mail to* LGreenspan@TLGAttorneys.com