# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

# PHILADELPHIA DIVISION

| | |
|---|---|
| **APRIL PLOEGER,**<br>Plaintiffs,<br><br>v.<br><br>**TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,**<br>Defendant. | Case No. 2:22-CV-02389-JHS<br><br>**MEMORANDUM IN OPPOSITION TO THE DEFENSE MOTION FOR SUMMARY JUDGMENT** |

## MEMORANDUM

This is a very straightforward lawsuit. April PLOEGER alleges that she is the victim of ADA and/or Title IX retaliation by PENN. Both of those claims have the same basic elements. Protected activity, contemporaneous or subsequent materially adverse action, and causation.

Even though PLOEGER has the burden of production and persuasion, Local Rules and this Court's Policies and Procedures put PLOEGER in the awkward position of PENN getting to frame the factual contours of her case. PENN's 103 paragraph statement of undisputed material facts are largely immaterial and/or disputed. PENN cherry picks evidence, interprets it in the light most favorable to itself, then concludes that PLOEGER must lose.

This Court constantly refers to summary judgment as an "extraordinary remedy." See, e.g., *Parker v. Deloitte Consulting, LLP*, 2024 WL 343176, at *4 (E.D.Pa. January 30, 2024)(J. Slomsky). Before PLOEGER has to do anything to defeat PENN's motion, PENN

must "point to evidence demonstrating no dispute of material fact exists." *Id*. At that point, PLOEGER must set forth specific facts showing that a genuine dispute of material fact exists and that a reasonable fact-finder could rule in her favor. *Id*.

PENN argues that PLOEGER cannot make her prima facie case, that it has legitimate non-retaliatory reasons for its actions, and that there is no genuine dispute of material fact for the jury to decide pretext.

PENN is wrong.

This Memorandum will show PLOEGER's prima facie case. She engaged in protected activity by filing her Third Amended Complaint on September 15, 2020. (PLOEGER RSOF, ¶¶ 84, 89). She also engaged in protected activity on July 9, 2021, July 14, 2021, August 1, 2021, and August 7, 2021.(PLOEGER ASOF, ¶¶ 1-2)(PLOEGER RSOF, ¶ 80). She suffered a materially adverse action when PENN refused to let her resume her studies. (PLOEGER RSOF, ¶ 94). Causation can be inferred due to unduly suggestive temporal proximity, pattern of antagonism, and the "first opportunity" doctrine. (PLOEGER ASOF, ¶¶ 1-2)(PLOEGER RSOF, ¶ 80, 89).

Then PLOEGER will dismantle what PENN refers to as "legitimate" reasons for denying PLOEGER the ability to return from leave.

As will be described below, PENN's insistence that PLOEGER had to "pay back money due on a Penn-backed loan;" the entire balance of her student loan's principal, interest, and fees in addition to her tuition receivable and administration fee, (PLOEGER RSOF, ¶ 47 at Bates D_1000) does not address the facts of PLOEGER's lawsuit. The case was never about the existence of debt. It had always been about the percentage of PLOEGER's principal PENN needed paid before letting PLOEGER resume her education.

On August 13, 2018, PLOEGER and PENN had their last financial communication before PLOEGER filed this lawsuit. Then, PLOEGER had to pay 0% of the principal on her overdue loan. (PLOEGER RSOF, ¶ 47 at Bates D_1001).

On August 12, 2021, PLOEGER and PENN had their first financial communication after PLOEGER filed this lawsuit. Now, PLOEGER had to pay 100% of the principal on that same overdue loan. (PLOEGER RSOF, ¶ 47 at Bates D_1000).

This Memorandum will then indict PENN's so called "legitimate" reason for keeping PLOEGER out of the classroom that PLOEGER did not submit "required" medical documentation. Unfortunately, for PENN, that requirement only exists under certain circumstances, and those circumstances did not apply to PLOEGER at the relevant time. (PLOEGER RSOF, ¶¶ 3, 65-66, 93, 95).

PLOEGER isn't sure if PENN's misleading reference to PLOEGER's communications or lack thereof with her "CaseNet" team is a third LNRR. Just in case, PLOEGER was in contact with CaseNet. (PLOEGER RSOF, ¶¶80, 95).

### A. PLOEGER's Protected Activity

PLOEGER's evidence of her protected activity is indisputable.

On April 1, 2020, she filed a lawsuit against PENN. (PLOEGER RSOF, ¶ 83). In that lawsuit, PLOEGER alleged that PENN violated the ADA. (PLOEGER RSOF, ¶ 84). On September 20, 2020, PLOEGER amended her complaint for the third time. (PLOEGER RSOF, ¶ 89). In that lawsuit, PLOEGER alleged that Dr. William Alexander, an employee of PENN, engaged in significant misconduct, but as material to this Memorandum, sought "personal intimacy" with PLOEGER. (PLOEGER RSOF, ¶ 89).

On July 9, 2021, PLOEGER emailed PENN, and stated that she was planning her return, "and may need accommodations from Student Disability Services." (PLOEGER

ASOF, ¶ 1). That same email made numerous statements that are considered protected activity under the ADA. *Id*.

On July 14, 2021, PLOEGER submitted her official "Request for Return from Leave of Absence." (PLOEGER ASOF, ¶ 2). The Request stated, inter alia, that she was on leave in the first place because "Student Disability Services did not give me the accommodations owed to me by law...". *Id*. at Bates D_204. The same document made numerous other statements that are considered protected activity under the ADA. *Id*. at 204-206. That same day, she informed PENN that she would be, if returned, working on paying off her hold which was approximately $1,487.38. (PLOEGER RSOF, ¶ 93).

### B. PENN's Materially Adverse Action

PLOEGER's evidence of PENN's contemporaneous or subsequent materially adverse action is indisputable.

On August 12, 2021, PENN told PLOEGER that it changed its mind. Instead of just the interest and some relatively nominal fees, PLOEGER would also have to pay the principal of the loan before it would let her return. (PLOEGER RSOF, ¶ 94).

Then on August 17, 2021, PENN told PLOEGER based on the hold, she could not come back to school. (PLOEGER RSOF, ¶ 95). A similar sequence of events occurred when PLOEGER attempted to return to PENN in 2022. (PLOEGER RSOF, ¶¶ 96-100).

### C. Causation

PLOEGER's evidence of causation is not indisputable, which is why she did not file her own Motion for Summary Judgment. Instead PLOEGER has evidence that would allow a reasonable jury to conclude that PLOEGER has proven causation.

First, it is indisputable that PENN's materially adverse action occurred after PLOEGER filed her lawsuits in 2020, sent her email and Return request in 2021 and in 2022. These facts "open the door" to the logical possibility of retaliation.

Second, it is indisputable that PLOEGER was on leave since the Spring of 2016 and attempted to return from leave numerous times through August of 2018 and, as of August 13, 2018, PENN told PLOEGER that it required payment of $1,487.38 in order to remove the collections holds. (PLOEGER RSOF, ¶¶ 81). That document specifically clarified that the required payment consisted of "the outstanding interest on your Student Aid Loan" and her "tuition recievable balance." *Id*. By contrast, in 2021 and 2022 after the lawsuits and subsequent protected activity, PLOEGER had to pay not just the interest on the same Student Aid Loan, but also the principal and collections fees. (PLOEGER RSOF, ¶¶ 93-94).

The intervening events between a $1,487.38 requirement and a $14,582.89 requirement is the most public and intense protected activity possible; a lawsuit in Court as well as continued direct accusations of violations of the ADA. (PLOEGER RSOF, ¶¶ 83-84, 89). More specifically, PLOEGER was informed of PENN's roughly 900% increase in the monetary requirement within a month of PLOEGER most recent accusation that PENN violated federal law *and PENN's knowledge* that PLOEGER planned to pay the August 2018 hold amount. (PLOEGER RSOF, ¶¶ 93-94).

The short period of time (less than a month) between PLOEGER's most recent protected activity and PENN's materially adverse action is sufficient in the Third Circuit, on its own, to establish causation. *Smith v. Presidio Networked Solutions, Inc.*, 2024 WL 3203314, at *15 (E.D.Pa., June 26, 2024)(citing *Lichtenstein v. Univ. of Pittsburgh Med Ctr.*, 691 F.3d 294, 307 (3d. Cir. 2012). Indeed, PLOEGER's lawsuit was active during this

time; a reasonable jury could find that her protected activity was ongoing and contemporaneous with PENN's increase of the hold amount.

Additionally, since PLOEGER was on leave and had not interacted with PENN since 2018, her attempted return in 2021 was PENN's "first opportunity to retaliate" for PLOEGER's lawsuit and subsequent protected activity. Courts can also infer causation from that fact. *Cheatom v. City of Philadelphia*, 2020 WL 354826, at *3 (E.D.Pa., Jan. 17, 2020)(citing *Lipschultz v. Holy Family Univ.*, 2017 WL 1331731, at *8 (E.D.Pa., Feb. 17, 2017); *Katchur v. Thomas Jefferson University*, 354 F.Supp.3d 655, 670 (E.D.Pa., Jan. 18, 2019)(same). Similarly, once PENN felt that PLOEGER *might* be able to fulfill the conditions it previously placed on her, the condition changed drastically. (PLOEGER RSOF 93-94).

### D. PENN's Proffered Reasons

PENN has raised "legitimate non-retaliatory reasons" for its decision to deny PLOEGER's return from leave. ECF 36, p. 20, ("Here, the evidence is clear that Penn's subsequent denials of Plaintiff's requests to return from leave were due instead to Plaintiff's failure to pay back money due on a Penn-backed loan, and in many instances, due to her failure to submit required medical documentation on time. This was the true cause of Penn's refusal to approve her return to the school.").

Since PENN has raised these LNDRs, PLOEGER must defeat them to proceed to trial. She can do so by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [PENN]'s proffered legitimate reasons for its actions that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer 'that [PENN] did not act for [the asserted] non-[retaliatory] reasons.'" *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d. Cir. 1994).

### a. PENN's excuse that PLOEGER owed it money

PENN's first proffered reason, that PLOEGER failed to pay back money due on a Penn-backed loan is non-responsive to this lawsuit. At trial, this argument would likely be subject to Fed.R.Evid. 403 for confusing the issue and misleading the jury.

PLOEGER specified that PENN's "adverse actions" were described in ¶¶ 54-55 of her operative Complaint. ECF 1-1, p. 78, ¶ 75, p. 79, ¶ 80. PLOEGER did everything in her power to make this clear. For instance, the "Facts of the Case" in the operative Complaint did not start until after the fiftieth paragraph. ECF 1-1, p. 72. Everything else in the operative Complaint was labeled as various "Background Facts." ECF 1-1, pp. 67, 68.

The two "Facts of the Case" paragraphs relevant to PENN's Motion for Summary Judgment are,

> "[w]hen PLOEGER provided PENN with the same "return from leave" letter just prior to the Fall 2021 semester (after suing PENN), PENN blocked the re-enrollment unless PLOEGER paid thousands of dollars (as opposed to the hundreds of dollars demanded prior to the filing of a lawsuit yet after the privately communicated protected activity, as compared to after the public protected activity of a lawsuit in open court).
>
> PENN continues to block PLOEGER's re-enrollment unless PLOEGER pays thousands of dollars, which was only demanded *after* PLOEGER sued PENN, when prior to the suit, PENN only demanded hundreds of dollars." ECF 1-1, p. 73, ¶¶ 54, 55. PLOEGER was not accusing PENN of inventing the debt out of thin air. Rather,

PLOEGER is accusing PENN of requiring "in full" payment of the debt as retaliation.

There is no summary judgment dispute that the debt PENN alleges existed prior to the materially adverse action for this lawsuit. (PLOEGER RSOF, ¶ 31). There is no summary judgment dispute that that is the same debt that led to the 2018, 2021, and 2022 collections holds. (PLOEGER RSOF, ¶¶ 80, 95, 100). Here, the debt relied on by PENN to deny PLOEGER's 2021 and subsequent returns, is the same debt that existed in 2018.

PENN's increased payment requirement is not addressed by PENN repeating that PLOEGER owed it money. Therefore PENN's LNRR is, per *Fuentes*, weak and incoherent on its face.

Even assuming arguendo that this proffered reason did respond to PLOEGER's lawsuit, PENN is still not entitled to summary judgment.

First, PENN admitted that, prior to the lawsuit, it allowed PLOEGER to "return[] to Penn despite not having cleared her $3,000 account." (PLOEGER RSOF, ¶ 28). This is a contradiction under *Fuentes* because it is, in fact possible, for PENN to allow a student's return even if the student owes money.

Second, PENN has the ability to be flexible with financial obligations. After all, it is a billion-dollar institution. PENN had been flexible with PLOEGER's finances until she sued. (PLOEGER RSOF, ¶¶29, 48, 52, 55, 61, 73, 75, 80-81; *compare to*, PLOEGER RSOF, ¶ 94). Under *Fuentes*, it is implausible that PENN really cared about, inter alia, the $26.33 administration fee.

Third, prior to the lawsuit, PENN only required PLOEGER to pay the interest on her loan. (PLOEGER RSOF, ¶ 81). This is a contradiction under *Fuentes* because it is, in fact, possible, for PENN to allow less than full payment of a debt to lift a collections hold. Furthermore, the offered this exact option to PLOEGER prior to the lawsuit. But not after.

Fourth, on July 14, 2021, PENN got specific notice that PLOEGER intended to pay the hold. (PLOEGER RSOF, ¶ 93). Only then did the hold amount increase approximately 900%. (PLOEGER RSOF, ¶ 94). PENN told PLOEGER this amount three days before the August 15 deadline to pay it. *Id*.

Fifth, PLOEGER's protected activity grew and then so did the barriers PENN placed in front of her; a classic pattern of antagonism. In 2015, PLOEGER is scared and

alone, left PENN after making numerous reports and being threatened. (PLOEGER RSOF, ¶ 38). When she returned, her scholarship worked differently. *Id*. Also, PENN was less willing to help financially (PLOEGER RSOF, ¶¶ 48, 52, 55, 61, 75), and stopped responding to PLOEGER's inquiries. (PLOEGER RSOF, ¶ 50). PENN's Student Disability Service stopped responding to PLOEGER's requests for help (PLOEGER RSOF, ¶¶ 34-35), put up unreasonable barriers to access (PLOEGER RSOF, ¶ 37, 41-43).

Then PLOEGER went on another leave, and this time, was extremely specific and vocal about PENN's violations of the ADA as being the reason for the leave. (PLOEGER RSOF, ¶ 66). She specified this wasn't a medical leave, rather a leave due to a legal dispute under federal law. *Id*. Based on PLOEGER's leave document, PENN knew that PLEOGER was not going to share treatment records. *Id*. Then, when PLOEGER tried to return, they demanded those records against policy. See infra.

Numerous times in 2016, PLOEGER referenced a lawyer, but then one started communicating with PENN. (PLOEGER RSOF, ¶ 61). At that time no lawsuit had been filed, and PLOEGER, very erroneously, thought litigation happened quickly; thus PLOEGER rescinded the return for the Spring 2018 semester. (PLOEGER RSOF, ¶ 78). But PLOEGER made clear she was coming back to school in Fall 2018. (PLOEGER RSOF, ¶ 79). Then, PENN insisted on enforcing its hold policy without exception, which PLOEGER challenged and in response, PENN *changed the reason it rejected her*. (PLOEGER RSOF, ¶ 80). Nonetheless, the size of the hold was, in a vacuum, manageable, though only communicated to PLOEGER two days before the August 15 due date. (PLOEGER RSOF, ¶ 81).

That lawyer finally files a lawsuit and again brings up the issues with Dr. Alexander. (PLOEGER RSOF, ¶ 89). The next time PLOEGER tried to return to PENN,

she continued protected activities. (PLOEGER ASOF, ¶¶ 1-2). She also forewarned PENN that she was going to handle her hold. (PLOEGER RSOF, ¶ 93). Then, twenty-nine days later, PENN significantly increased the size of the hold. (PLOEGER RSOF, ¶ 94).

When combined with PLOEGER's prima facie case, any of these arguments against PENN's proffered reason are sufficient enough to reject PENN's proffered reason, and deny summary judgment.

### b. PENN's excuse that PLOEGER did not submit required papers

PENN's second proffered reason, that in many instances, PLOEGER was not accepted due to her failure to submit required medical documentation on time, while responsive to PLOEGER's claim, is not an undisputed fact. PENN still must produce sufficient evidence in the summary judgment record to establish that PLOEGER was, in fact, required to submit medical documentation at all. But based on its own evidence, a reasonable jury could determine that PLOEGER was not "required" to submit medical documentation.

This is because PENN admits that "[s]tudents whose leave request indicated medical circumstances as at least part of the reason for that request will be required to present a treating clinician's current evaluation of the medical condition to the relevant health office (Student Health and Counseling). The College, in consultation with these offices, will determine whether the results of the evaluation suffice to satisfy the conditions set forth in the original message granting approval for the leave." (PLOEGER RSOF, ¶ 3). PENN cannot lay a foundation that the policy applied to PLOEGER in 2021 or 2022.

First, PENN's Motion can also be denied since it states in its own Statement of Facts that, "[a]n August 17, 2021, email from Pansing stated that because [PLOEGER] did

not fulfill certain requirements (including to resolve her financial holds, and to contact her CaseNet team) by the required deadlines, her request to return was not approved." (PENN SOF, ¶ 95). PENN's own Statement of Facts also states that, "[o]n August 19, 2022, Pansing sent Plaintiff a letter stating that her return from leave was denied because she did not resolve her financial hold by the deadline specified." (PENN SOF, ¶ 100). In the light most favorable to PLOEGER, the explicit absence of reference to failure to provide "required" medical documentation makes PENN's proffered reason inconsistent and contradictory under *Fuentes*. On these facts, PENN failed to meet its initial summary judgment burden.

Second, the last time PLOEGER left PENN on leave was in the Spring 2016 semester. (PLOEGER RSOF, ¶ 66). PLOEGER's leave request did not "indicate[] medical circumstances as at least part of the reason for that request[.]" *Id*. Instead, PLOEGER's relevant leave request explicitly stated the opposite, twelve (12) times. *Id*. If PLOEGER did not indicate that her leave was medical, then PENN's policy did not apply to PLOEGER. (PLOEGER RSOOF, ¶ 3). PLOEGER specifically disclaimed medical circumstances. Therefore, PENN's policy did not apply.

Third, PENN's "original message granting the leave" did not set medical conditions. (PLOEGER RSOF, ¶¶ 3, 66). The March 21, 2016 "LOA LETTER" does not state, like it did on the February 20, 2015, LOA LETTER, "[w]e understand that you are taking a leave to address health concerns. During your leave we expect you to consult with your clinicians and take whatever steps are necessary to regain your health and your ability to succeed as a student." (PLOEGER RSOF, ¶ 66). The absence of the language indicating that the medical circumstances policy was in effect was present in 2015, but

missing in 2016. A reasonable jury could conclude that, for the Spring 2016 leave, the medical documents policy did not apply in 2021 or 2022.

Fourth, PLOEGER also stated her leave was not medical prior to going on leave in Spring 2016. (PLOEGER ASOF, ¶ 4).

Particularly when PENN's summary judgment evidence is a policy that, by its own written terms, didn't actually apply to PLOEGER, the proffered reason weak, implausible, inconsistent, incoherent, and contradictory under *Fuentes*. When combined with PLOEGER's prima facie case, any one of these four arguments against PENN's proffered reason are sufficient enough to reject PENN's proffered reason and deny summary judgment.

### c. PENN's excuse that PLOEGER did not email the right person

There is no dispute that PLOEGER in fact contacted her CaseNet team. (PLOEGER RSOF, ¶ 95).

### E. PLOEGER's Title IX Claim

The Title IX retaliation claim regards the same materially adverse actions. The timeline is slightly, but immaterially different since it was not until September 15, 2020 that her lawsuit made allegation implicating Title IX. (PLOEGER RSOF, ¶ 89). PLOEGER nonetheless testified that she made reports that Dr. Alexander sexually harassed her to numerous people at PENN since 2008. (PLOEGER RSOF, ¶¶ 16, 82, 89).

**Conclusion**

PLOEGER established her prima facie case. For PENN's first proffered reason for its actions, the existence of PLOEGER's financial debt, is not logically connected to PLOEGER's prima facie case. On the summary judgment record, due to PENN's binding Rule 30(b)(6) testimony, there is a genuine dispute as to the existence of the debt in the

first instance. For PENN's second proffered reason for its actions, PLOEGER's failure to submit required documents, PENN failed to lay a foundation that PLOEGER was required to submit the demanded documentation. On the summary judgment record, due to, inter alia, PENN's binding testimony and numerous contemporary communications in 2021 and 2022, there is a genuine dispute whether PLOEGER did not submit the documents. Finally, while a seeming "throw away" type argument (perhaps it was due to be deleted and a penultimate draft was inadvertently filed) but PLOEGER was in communication with "CaseNet" on the face of her emails. In all, summary judgment should be denied.

Respectfully submitted on July 11, 2025

                                **THE TRIAL LAW FIRM, LLC**

By:    /s/<u>Marty Harris</u>
          Marty Harris, Esquire
          Pa. Id. No. 319504
          Fort Pitt Commons
          445 Fort Pitt Boulevard, Suite 220
          Pittsburgh PA 15219
          412.588.0030 | <u>MH@TLawF.com</u>