IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| April Ploeger,<br><br>                  Plaintiff,<br><br>v.<br><br>The Trustees of the University of Pennsylvania,<br><br>                  Defendant. | **Civil Action**<br><br>**No. 2:22-cv-2389-JHS** |

### DEFENDANT THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA'S PRETRIAL MEMORANDUM

Defendant, The Trustees of the University of Pennsylvania ("Penn"), by and through its undersigned counsel, hereby submits this Pretrial Memorandum pursuant to this Court's Order dated June 30, 2025 (Doc. No. 73), this Court's Policies and Procedures, and Local Rule 16.1.

**I.  Defendant's Factual Summary of the Case**

Plaintiff's two remaining claims in this case are that Penn retaliated against her in violation of the Americans with Disabilities Act ("ADA") and Title IX of the Education Amendments of 1972 ("Title IX"), by denying her re-enrollment and requiring that she satisfy her outstanding financial obligations to Penn, including a student loan. Plaintiff claims that these actions were taken due to protected activity, *i.e.*, because she (i) asserted a potential need for accommodations due to a disability, and (ii) reported sexual misconduct by her psychologist at Penn, Dr. Alexander, and included such allegation in her Third Amended Complaint in September 2020.

1

Plaintiff April Ploeger enrolled at Penn in 2006 and she received a Trustee Scholarship from Penn. Over the course of eighteen years, she has completed only one semester: Fall 2008. During the other semesters she enrolled at Penn (including Fall 2006, Fall 2007, Spring 2009, Spring 2012, Fall 2012, Spring 2013, Fall 2013, Spring 2015, and Spring 2016), she took leaves of absences. Plaintiff was last enrolled at Penn for the Spring 2016 semester and she took a leave of absence in February 2016. Since that time, she has applied to return to Penn for the Fall 2017, Spring 2018, Fall 2018, and Fall 2021.[1].

Penn has various conditions for returning from a leave of absence. Those pertinent to Plaintiff's return are: 1) the removal of the financial holds on her registration; and 2) the submission of appropriate medical documentation.[2] Plaintiff did not satisfy these conditions when she sought to return in 2017, 2018, 2021, 2022, or 2025.

Plaintiff's financial accounts with Penn have been in arrears since at least 2012. Penn agreed to remove late fees on Plaintiff's Tuition Receivable account (her "Student Account") in 2012, 2013, and 2014 -- fees that had at times accrued to $1,200 -- to try to help her minimize the amount of debt she owed.

Plaintiff took out an $8,891 Student Aid Loan through Penn for the 2014-2015 academic year to help cover her medical expenses. Because she was enrolled at the time, she qualified for and received a student deferment for this loan for the period

---

[1] Plaintiff has also applied in Fall 2022, and Spring 2026 semesters, but these are irrelevant in the instant matter.
[2] In accordance with Penn's procedures, Plaintiff is required to submit medical documentation because of her history of requests to take leaves of absence for medical reasons and ongoing medical concerns she shared with the school.
.

January 1 – February 1, 2016. After a nine-month grace period, the loan went into repayment beginning on November 1, 2016. Plaintiff applied for and was granted forbearance on the loan from November 2016 until June 1, 2017, but interest continued to accrue on the principal balance during that time. By 2018, the interest due was $938.59.

Also by 2018, Plaintiff separately owed Penn money on her Student Account/Tuition Receivable in the amount of $548.79. Despite agreeing to $10 monthly payments to pay down the balance, Plaintiff made no payments on this account after October 2017. Plaintiff applied to return for Fall 2018, but was denied, in part because of a collections hold on this account. As of August 2018, the combined total of Plaintiff's outstanding obligations to Penn was $10,378.38.

After Plaintiff reached out to Penn to inquire about the financial holds that blocked her registration, Penn advised her by letter dated August 13, 2018 that she must pay at least the interest on her Student Aid Loan by November 10, 2018 ($938.59), in order to qualify for forbearance for an additional six months. Penn also advised her that she was required to pay her full Tuition Receivable account balance of $548.79. The letter further stated that, until she paid both the then-accrued interest on her Student Aid Loan and her full Tuition Receivable account balance, she could not be considered for re-enrollment. Plaintiff did not pay either. Thus, she did not qualify for additional forbearance. In accordance with Penn's policies, the financial holds remained on Plaintiff's accounts.

Plaintiff's Student Aid Loan was subject to a Promissory Note, which stated that repayment shall be made in monthly installments of not less than $30, and that interest

3

shall accrue at an annual percentage rate of 6.0%. Plaintiff's Promissory Note also contained an acceleration clause, which stated that in the event of a failure to make any payment when due, the full amount, including interest, would become "immediately due and payable" at the option of the lender. Indeed, that is exactly what occurred here. When Plaintiff did not make any payments on her student loan, the principal became due on her loan. The monthly loan statements Plaintiff received from her loan servicer, ECSI, reflected the acceleration of the principal of her loan in 2018.

Plaintiff claims she engaged in protected activity under Title IX by filing a Third Amended Complaint on September 15, 2020[3] (which was the first record of any complaint about sexual impropriety by her former school psychological counselor, Director of Counseling and Psychological Services Dr. William Alexander). Plaintiff may attempt to testify about alleged oral complaints to various Penn employees in 2008/2009 and 2015, but these should be precluded as time-barred and irrelevant to the instant Title IX cause of action filed in September 2020.

Plaintiff's first alleged protected activity under the ADA was on July 9, 2021, when she submitted her Return from Leave Request to return for the Fall of 2021 in which she referenced a potential need for accommodations, and again on July 14, 2021 when she filed her Request for Return from Leave of Absence form for Fall 2021.

---

[3] Plaintiff filed her original Complaint in the Philadelphia Court of Common Pleas on April 1, 2020, her First Amended Complaint and her Second Amended Complaint in the same court on August 7, 2020. She filed her Third Amended Complaint on September 15, 2020 in the same court. On June 8, 2022, Plaintiff filed her Fourth Amended Complaint in the same court, which Defendant removed to this Court based on its federal-based discrimination and retaliation claims. On January 31, 2023, this Court dismissed the majority of the claims, leaving the two retaliation claims at issue here. (Doc. 9.)

In conjunction with her request to return for Fall 2021, she requested her account balance because she knew that she could not return if she had a collections hold on her account. The University Bursar responded to her request for her balance by advising of the current balance on her Student Aid Loan (which now included the interest accrued to that point as well as the full principal of $8,891, as the loan had accelerated in 2018), the total of which at that point had risen to $14,034.10. Plaintiff also owed the balance on her Tuition Receivable account, which had remained the same as it was in 2018: $548.79. In total, Plaintiff owed $14,582.89 on both accounts.

Plaintiff does not dispute that she owes payment in full on her accounts. Instead, she claims that the University *chose* to charge her the full amount owed on her student loan in 2021, instead of granting her leniency, in retaliation for filing her Third Amended Complaint and for stating that she would need accommodations.

Penn's financial policies require that students who have been placed on financial hold by the Office of Student Registration and Financial Services ("SRFS") must resolve their financial issues and have their holds cleared before they can register for classes. Consistent with this, Penn's return from leave policy requires students to clear all holds affecting their registration before they can return from leave. Plaintiff never attempted to pay any portion of either her Student Aid Loan or her Tuition Receivable balance in 2017, in 2018, or at any point thereafter. Because she defaulted on payments after her loan went back into repayment in November 2016, the principal of her loan became due after her forbearance period had expired.

Plaintiff cannot prove causation because Penn's 2021 denial of her request to return was based solely on its legitimate policy requiring students to satisfy outstanding

5

financial obligations before re-enrollment, not any protected activity. The $14,582.89 she was required to pay in 2021 resulted from contractual interest accrual at 6% annually under the Promissory Note and acceleration of the principal—not retaliation. What is more, Plaintiff was well aware of Penn's financial and leave policies well before any alleged 2020 protected activity. She had previously been denied enrollment in Spring 2018 and Fall 2018 for the same exact reasons, *i.e.*, failure to pay her outstanding account balances and to have her treatment providers submit appropriate medical documentation to CAPS.

After repeated exchanges with Plaintiff about the application of its financial policies, in 2016, Penn's SRFS office explicitly told Plaintiff it would "follow our policies going forward" and would not make exceptions for her as it had in the past.

Plaintiff was made aware of her loan obligations to Penn on an ongoing basis, as she also was receiving monthly loan statements from her loan servicer, ECSI, that detailed the amounts she owed on her student loan. Plaintiff's financial obligation to Penn was in the thousands prior to any protected activity and her loan obligation grew monthly due to accruing interest and, ultimately, accrual of the principal of the loan before any such protected activity, and not because of any lawsuit or because she asserted a need for accommodations.

## II.     Defendant's Witnesses

The following is a list of the names and addresses of the witnesses Defendant intends to call at trial:

### Defendant's Fact Witnesses:

1. **Plaintiff, April Ploeger**: Plaintiff will testify to the allegations in her complaint.

2. **David "Wally" Pansing, Associate Director of Academic Advising, Penn**: Mr. Pansing will testify regarding communications and interactions with Plaintiff, Plaintiff's history of matriculation, history of leaves and requests to re-enroll, and the processes related to same.

3. **Elaine Varas, Senior University Director of Financial Aid, Penn**: Ms. Varas will testify regarding Penn's financial aid policies, return from leave policies, financial hold policies, as well as the history of Plaintiff's financial obligations, Student Aid Loan and Student Account.

4. **Susan Shapiro, Ph.D., Former Jesselson Director, Office of Student Disabilities**: Dr. Shapiro will testify regarding her communications and interactions with Plaintiff and Plaintiff's requests for accommodations.

5. **Ryan Miller, Senior Director of Weingarten Center, Penn**. Mr. Miller will testify regarding the process for requesting ADA accommodations at Penn and the history of Plaintiff's requests for accommodations.

6. **Dr. William Alexander, former Director of CAPS, Penn**. Dr. Alexander will testify regarding his treatment of Plaintiff at CAPS, his communications and interactions with Plaintiff, his role with respect to Plaintiff's requests for accommodations, and Plaintiff's allegations of his behavior.

7. **Sharon Smith, Associate Vice Provost for University Life, previously Executive Director of Student Intervention Services, Penn**: Ms. Smith will testify regarding communications and interactions with Plaintiff and Plaintiff's allegation that she complained to her about Dr. Alexander's behavior.

8. **Gary Purpura, Associate Vice Provost for Education and Academic Planning, formerly Plaintiff's College Advisor**: Mr. Purpura will testify to Plaintiff's Leaves and Requests for Returns from Leave and the requirements for the same, his communications and interactions with Plaintiff, and Plaintiff's requests for accommodations and the process for the same.

9. **Sharon Pepe, former University Bursar, Penn**: Ms. Pepe will testify regarding her 2021 correspondence with Plaintiff, her communications with Plaintiff, and Plaintiff's history of financial obligations.

10. **Hikaru Kozuma, Associate Vice Provost of University Life, Penn**: Mr. Kozuma will testify regarding communications and interactions with Plaintiff, Plaintiff's allegation that she complained about Dr. Alexander's behavior.

7

11. **Max King, former Associate Vice Provost, and Dr. Alexander's Supervisor:** Dr. King will testify regarding communications with Plaintiff and Plaintiff's allegation that she complained about Dr. Alexander's behavior.

12. **A representative of Conduent Education and/or ACS Education Services and/or ECSI.** The representative will testify regarding Plaintiff's student loan history and obligations.

13. **A representative from Penn:** The representative will testify about the absence of any reporting of complaints of sexual misconduct by Plaintiff.

14. **Janet Hartranft, M.S., Outpatient therapist at Horizon House**: Ms. Hartranft was Plaintiff's therapist during 2015- 2021, and will testify to Plaintiff's mental health conditions and history of emotional distress, including depression and anxiety.

15. **David Larkin, Esq.:** Mr. Larkin will testify to his communications with Penn regarding Penn's alleged wrongdoing and the allegations asserted in the Complaints that he filed.

16. **Matthew Sessa, former Associate Vice President of Student Registration and Financial Services, Penn**: Mr. Sessa will testify regarding his 2018 correspondence with Plaintiff, his communications with Plaintiff, and Plaintiff's history of financial obligations.

**Defendant's Expert Witnesses**

1. **Amanda Marie Sizemore, vocational expert (report and C.V. attached as Exhibit A)**: Ms. Sizemore will testify as to the opinions and findings in her report, including the extent of Plaintiff's alleged lost compensation and benefits and her failure to mitigate damages.

2. **Dr. Alexis L. Beattie, M.D., M.P.H., psychiatrist (report and C.V. attached as Exhibit B)**: Dr. Beattie will testify as to the opinions and findings in her report, including the extent the emotional or psychological damages Plaintiff may have suffered due to the actions she alleges by Penn.

III. **Defendant's Exhibit List**

| Exhibit No. | Document | Bates Range |
|---|---|---|
| Exhibit 1 | Student Registration & Financial Services Withdrawals and Leaves of Absence | D_000144-146 |
| Exhibit 2 | Penn's Leave of Absence Checklist | D_000158 |

| Exhibit 3 | Penn's Return from Leave Checklist | D_159-161 |
| Exhibit 4 | Guidelines for Addressing Academic Issues of Students with Disabilities | D_000114-118 |
| Exhibit 5 | Student Disabilities Services, Getting Started | D_000127-132 |
| Exhibit 6 | Plaintiff SDS 2016 Psychological Disability Documentation | D_000029-33 |
| Exhibit 7 | January 29, 2016 Brown-Nevers Letter | D_000948-949 |
| Exhibit 8 | Plaintiff Unofficial Transcripts 2021 and 2023 | D_000109, 1255 |
| Exhibit 9 | October 21, 2008 Acceptance of Services Letter | D_000024 |
| Exhibit 10 | D. Larkin file | LARKIN_0001-92 |
| Exhibit 11 | July 1, 2017 Letters between D. Larkin and B. Fraser | D_001220-1221 |
| Exhibit 12 | May 4, 2020 Email to G. Purpura and SAS Dean's Office | TFLPLOEGER-000000012-17 |
| Exhibit 13 | College of Arts & Sciences Leave of Absence Policy | D_000139-141 |
| Exhibit 14 | November 13, 2012 Acceptance of Services Letter | D_000022 |
| Exhibit 15 | October 2014 Return from Leave Request | D_000190-191 |
| Exhibit 16 | January 6, 2015 email between Plaintiff and M. Brown-Nevers | D_000971-976 |
| Exhibit 17 | Feb 12, 2015 Student Aid Loan Promissory Note | D_000074-75 |
| Exhibit 18 | November 11, 2015 Request for Return from Leave of Absence | D_000192-94 |
| Exhibit 19 | Jan and Feb 2016 Emails b/w Plaintiff, L. Burton-Grika and S. Shapiro | D_000009-10, D_000015-16 |
| Exhibit 20 | January 20, 2016 Emails b/w Plaintiff and S. Shapiro | D_000017-18 |
| Exhibit 21 | January 23, 2016 Email b/w Plaintiff and H. Hunsberger, M. Brown-Nevers, A. Gutmann, H. Logan, and H. Kozuma | D_000950 |
| Exhibit 22 | February 8-9, 2016 Emails b/w Plaintiff and S. Shapiro | D_000862-865 |
| Exhibit 23 | February 10, 2016 Emails b/w S. Shapiro and Plaintiff | D_000617-619 |
| Exhibit 24 | February 15, 2016 Emails b/w Plaintiff and G. Purpura | D_000605 |
| Exhibit 25 | April 12, 2016, May 5, 2016, June 2016 Emails re. $12,168 refund | D_000927, 1022, 958-60 |
| Exhibit 26 | June 24 and 27, 2016 Emails b/w Plaintiff and M. Brown-Nevers, H. Hunsberger, H. Kozuma | D_000951-52 |
| Exhibit 27 | July 2016 Email from C. Wilburn re: Plaintiff's $12,000 check | D_000571 |
| Exhibit 28 | July 26, 2016 and Aug. 1, 2016 Emails b/w Plaintiff and J. Delaney | D_000965-67 |

| Exhibit 29 | July 28, 2016 Emails b/w Plaintiff and M. Brown-Nevers, A. Gutmann, H. Kozuma, H. Hunsberger, and J. Delaney | D_001018-1021 |
|---|---|---|
| Exhibit 30 | March 31, 2016 and April 1, 2016 Emails b/w Plaintiff and W. Pansing | D_000602-3 |
| Exhibit 31 | Penn Hub Emails | D_000803-814 |
| Exhibit 32 | Penn Reduction of Tuition and Fees Policy | D_000148-149 |
| Exhibit 33 | April 5, 2016 G. Purpura Email to Plaintiff | TFLPloeger_281 |
| Exhibit 34 | May 2017 Emails re outstanding Student Loan balance | D_000977-981 |
| Exhibit 35 | July 13, 2017 Return from Leave Request (for Fall 2017) | D_000195-197 |
| Exhibit 36 | August 7, 2017 Email from R. Schept to Plaintiff | D_000176 |
| Exhibit 37 | August 15, 2017 Emails b/w Plaintiff and G. Purpura | D_000186-188 |
| Exhibit 38 | August 22, 2017 Email from W. Pansing to Plaintiff | D_0001380 |
| Exhibit 39 | November 14, 2017 Return from Leave Request (for Spring 2018) | D_000201-203 |
| Exhibit 40 | November 27, 2017 Emails b/w Plaintiff and K. Shanks and J. Delaney | TLFPLOEGER_656-658 |
| Exhibit 41 | November 30, 2017 Emails b/w Plaintiff and G. Purpura | TLFPLOEGER_660 |
| Exhibit 42 | December 12, 2017 Email from Plaintiff to J. Delaney | D_000935-936 |
| Exhibit 43 | December 14-15, 2017 Emails b/w Plaintiff and G. Purpura, and G. Purpura and W. Pansing re extension request | D_000706, 707, 710 |
| Exhibit 44 | July 14, 2018 Return from Leave Request (for Fall 2018) | D_000198-200 |
| Exhibit 45 | August 7, 2018 Emails b/w W. Pansing and Plaintiff | D_000766-768 |
| Exhibit 46 | August 13, 2018 Letter from M. Sessa to Plaintiff | D_000879 |
| Exhibit 47 | Plaintiff November 2018 Tuition Receivable Account Statement | D_000065 |
| Exhibit 48 | January 8, 2020 Emails b/w Plaintiff and G. Purpura | TLFPLOEGER-1 |
| Exhibit 49 | August 15, 2017 Emails b/w Plaintiff and J. Delaney | D_000934 |
| Exhibit 50 | August 23, 2018 Letter from D. Larkin to B. Fraser | D_000008 |
| Exhibit 51 | July 14, 2021 Return from Leave Request (for Fall 2021) | D_000204-206 |
| Exhibit 52 | July 9, 2021 Emails b/w Plaintiff and Penn | D_000170 |
| Exhibit 53 | July 9, 2021 Emails b/w Plaintiff and W. Pansing | D_000102-103 |

| Exhibit 54 | August 12, 2021 Letter from S. Pepe to Plaintiff | D_000095 |
|---|---|---|
| Exhibit 55 | August 17, 2021 Letter from W. Pansing to Plaintiff | D_000778-779 |
| Exhibit 56 | July 12, 2022 Return from Leave Request (for Fall 2022) | D_000207-209 |
| Exhibit 57 | Plaintiff July 2022 Student Aid Loan Printout | D_000066 |
| Exhibit 58 | August 2, 2022 from R. Schept to Plaintiff | D_000174 |
| Exhibit 59 | August 17, 2022 Email from W. Pansing to Plaintiff | D_000792 |
| Exhibit 60 | August 19, 2022 Email from W. Pansing to Plaintiff | D_000793-794 |
| Exhibit 61 | SalesForce Student Financial Services Communications with Plaintiff | D_002019-34 |
| Exhibit 62 | January 26, 2015 Email from L. Burton-Grika to Plaintiff | D_002036-2039 |
| Exhibit 63 | Ploeger Perpetual Billing Status | D_002068-77 |
| Exhibit 64 | Penn Policy Principles of Responsible Conduct | D_002043-44 |
| Exhibit 65 | Penn Policy Against Retaliation | D_002045-2046 |
| Exhibit 66 | Penn Almanac Policy: Consensual Sexual Relations Between Faculty and Students | D_002047-48 |
| Exhibit 67 | 1908 Financial Hold/Collection Hold Policy | D_002049-50 |
| Exhibit 68 | W. Pansing Notes on Timeline | D_002052-55 |
| Exhibit 69 | March 10, 2016 ACS email to Plaintiff | D_002056 |
| Exhibit 70 | June 30, 2016 ACS email to Plaintiff | D_002057 |
| Exhibit 71 | October 31, 2016 ACS Bill to Plaintiff | D_002058-60 |
| Exhibit 72 | December 20, 2016 Plaintiff Forbearance Request and email | D_002061-3 |
| Exhibit 73 | May 31, 2017 ACS Bill to Plaintiff | D_002063-5 |
| Exhibit 74 | June 2, 2017 Email from Plaintiff to H. Hunsberger, Kozuma, Delaney, and K. Shanks | D_002066 |
| Exhibit 75 | June 9, 2017 Email from J. Delaney to Plaintiff | D_002067 |
| Exhibit 76 | January 22, 2015 Plaintiff Student Health and Counseling Note | D_001370 |
| Exhibit 77 | 2013 Plaintiff Student Health Services Records | D_001432, 1922, 1927 |
| Exhibit 78 | Excel spreadsheet, Student Registration and Financial Services Billing Account Snapshot Fall 2006-Spring 2015 | D_002041 |
| Exhibit 79 | Excel spreadsheet, April Ploeger billing summary | D_002042 |
| Exhibit 80 | Penn Financial Policies 2018 through 2021 | D_2078-2083 |
| Exhibit 81 | ECSI Student Loan Statement dated April 23, 2018 | D_002084-2088 |
| Exhibit 82 | ECSI Student Loan Statement dated May 21, 2018 | D_00289-2093 |

| Exhibit 83 | Documents from other lawsuits filed by Plaintiff | Produced by Plaintiff in Discovery without bates labels |
|---|---|---|
| | All documents and materials produced and exchanged in discovery | Defense's production: D_00001-2093; Plaintiff's production: TLFPLOEGER-01-728; PLTPLTAP-2202, PLTAP-2354-2376 |

## IV.     Deposition Designations

Penn may introduce deposition designations of the Plaintiff, to be determined based upon her testimony in her case-in-chief.

## V.     Defense Position on Monetary Damages

Plaintiff has not suffered any monetary loss as a result of any of Penn's actions. Plaintiff is claiming nominal damages; non-economic compensatory damages for emotional distress, humiliation, embarrassment, pain and suffering, and loss of enjoyment of life; punitive damages; and attorney fees and costs. However, any and all damages that Plaintiff sustained as a result of her not being able to return to Penn are due entirely to her own actions.

Plaintiff claims that she cannot work because she does not have a degree and no one will hire her. Penn's vocational expert, Amanda Sizemore, will explain that Plaintiff remains employable with representative earnings in occupations paying $29,540 to $34,460 annually, despite her lack of degree. Ms. Sizemore will further testify that Plaintiff has not made a reasonably diligent effort in her job search.

Plaintiff has not presented any expert damages calculation. She has stated in conclusory fashion that she is entitled to lost wages due to a delay in her graduation

from Penn. Plaintiff has not applied to any other colleges or universities in an effort to mitigate her damages. Plaintiff's allegation that she is entitled to a salary assuming she obtained a bachelor's degree is speculative and should not be admitted at trial. Since her initial enrollment in 2006 (*18 years ago*), Plaintiff has only completed one semester at Penn. She was never close to obtaining a bachelor's degree due to her recurring leaves of absences and withdrawals. Any suggestion that she would have obtained a degree from Penn is completely speculative.

Penn's psychiatric expert, Dr. Alexis Beattie, will testify about Plaintiff's extensive mental health issues predating her initial enrollment at Penn, including childhood depression and anxiety, a 2005 psychiatric hospitalization for suicide attempt by overdose, and a medical leave of absence for depression before even starting at Penn in 2006. Dr. Beattie will further testify that Plaintiff's medical records indicate that she has a history of depression and anxiety that have been present since childhood and have been relatively unchanged throughout her adult life, whether or not she has interacted with Penn. Plaintiff is a serial lawsuit filer, including filing against CVS and Lowes, and complaining of emotional distress in those pleadings, which includes her doctor's note stating that Lowes' Hotel's negligence caused Plaintiff to suffer emotional distress. Dr. Beattie will further opine that Plaintiff has not made adequate efforts to improve her mental health and tends to reject attempts of others to help her and often does not follow recommendations of her outpatient mental health providers. She will testify that Plaintiff misperceives the effect that Penn's treatment has had on her mental health while minimizing other important traumatic issues in her life.

**VI.    Joint Stipulations of Counsel**

Counsel stipulates pertaining to the dates of Plaintiff's matriculations and leaves of absences at Penn.

## VII. Objections to Exhibits

Defendant will determine objections to Plaintiff's exhibits once Defendant has had a chance to review Plaintiff's exhibit list which was provided the same day as the memo was due. Defendant will also provide objections to Plaintiff's proposed deposition designations, along with counter-designations, once Plaintiff provides same.

## VIII. Anticipated Important Legal Issues

None identified at this time.

## IX. Anticipated Length of Trial

Defendant anticipates that trial will last 5 days.

                                        **TUCKER LAW GROUP, LLC**

Date: November 6, 2025        /s/ Kathy Kirkpatrick
                                        Joe H. Tucker, Jr., Esquire
                                        Kathy Kirkpatrick, Esquire
                                        Hillary B. Weinstein, Esquire
                                        Ten Penn Center
                                        1801 Market Street, Suite 2500
                                        Philadelphia, PA 19103
                                        (215) 875-0609
                                        Attorneys for Defendant, The Trustees of the University of Pennsylvania

## CERTIFICATE OF SERVICE

I, Hillary Weinstein, Esquire hereby certifies that on November 6, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the Court's system, including the following counsel of Record:

> Marty Harris, Esquire
> The Trial Law Firm, LLC
> 428 Forbes Avenue, Suite 1700
> Pittsburgh Pennsylvania 15219
> MH@TLawF.com

**TUCKER LAW GROUP**

/s/ Hillary Weinstein
Hillary B. Weinstein, Esquire

Dated: November 6, 2025

1